Filed 9/26/23  P. v. Flores CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

ISAIAH CYRUS FLORES,

     Defendant and Appellant.

E081202

(Super.Ct.No. RIF1105254)

OPINION

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

I.

INTRODUCTION

Defendant and appellant Isaiah Cyrus Flores appeals the trial court's postjudgment order denying his Penal Code[1] section 1172.6 (formerly section 1170.95)[2] petition for resentencing under the procedures established by Senate Bill Nos. 775 and 1437. Counsel has filed a brief under the authority of *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), requesting this court to conduct an independent review of the record. In addition, defendant has had an opportunity to file a supplemental brief with this court and has not done so. Because defendant's counsel filed a brief raising no issues and defendant was notified that failure to timely file a supplemental brief may result in the dismissal of the appeal as abandoned and was given an opportunity to file a personal supplemental brief but failed to do so, we may dismiss the appeal. Even if we exercise our discretion to conduct an independent review of the record in the interest of justice, we find no meritorious arguable issue and affirm the postjudgment order. (*Delgadillo*, at pp. 228, 232.)

---

[1] All future statutory references are to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We cite to section 1172.6 for ease of reference.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant and codefendants, Joshua Flores[4] and Roland Martinez, committed an

armed home invasion robbery, during which defendant and Joshua attempted to steal a

large stash of marijuana from Bruce Allen, Jr. (Junior) and Bruce Allen, Sr. (Senior).

Roland provided defendants with transportation to and from the crime scene. The

botched robbery ended in a shooting melee, with the Flores brothers, among others,

sustaining gunshot wounds and fleeing empty handed.

Specifically, during the evening of September 28, 2011, Junior was at home with

his girlfriend, Christine Schafer; his father, Senior; and his cousin, Kevin Yip. Junior and

Senior sold marijuana. There was about 13 pounds of marijuana, worth up to about

$40,000, in the Allen home. Around 9:00 p.m. Travis Bandfield, a friend of the Allens,

arrived in a black Volkswagen Jetta at the Allen home intending to purchase marijuana.

Meanwhile, Roland, who was unarmed, drove Joshua and defendant to the Allen

home in a black Lexus. The Flores brothers were both armed with handguns and wore

hoodies, gloves, and bandanas. They also sold marijuana. Joshua was known as the

"weed man." Upon arriving at the Allen home in Riverside, defendants drove past the

---

[3] The factual background is taken from this court's nonpublished opinion in defendant's direct prior appeal, case No. E057930. (*People v. Flores* (Oct. 21, 2014, E057930) [nonpub. opn.] [2014 WL 5341922].)

[4] Defendant and Joshua Flores are brothers (Flores brothers).

home and parked down the street. Roland remained in the car, crouched down in the driver's seat, while Joshua and defendant walked to the Allen home.

Meanwhile, while Junior was in the kitchen with Bandfield conducting business, Senior heard the dogs start barking. As he stepped outside the front door and lit a cigarette on the front porch, unaware of the Flores brothers' presence, one of the Flores brothers struck Senior in the head. Senior felt dazed. Senior fought the Flores brothers as he struggled to get back inside. Junior saw one of the Flores brothers strike Senior above his left eye with a gun and knock Senior to his knees just inside the front door. Junior ran from the kitchen to his bedroom and retrieved two handguns. Joshua grabbed Senior from behind, pushed him to the floor, pressed a gun to his back, and ordered Senior to call for Junior to come out of his bedroom. Instead, Senior yelled, "'They've got guns.'" Joshua shot Senior in the lower back. Defendant ordered Yip to get on the ground and pressed a gun to his back.

Junior emerged from his bedroom, yelled, "'You want to disrespect me in my house,'" and fired at the Flores brothers. The Flores brothers and Junior fired at each other, resulting in both Flores brothers sustaining gunshot wounds. The shootout ended when defendant dragged Joshua from the house. Roland drove up to the front of the house, helped the Flores brothers into the car, and drove to the hospital. The Flores brothers survived their gunshot wounds, but Joshua is now paralyzed and confined to a wheelchair.

4

Junior and his girlfriend, Christine, backed out of the driveway and drove away in a red car. Junior drove to Lake Elsinore and threw two guns into the lake.

Bandfield, along with Bearman, Jordan, and Fortner, drove away in Bandfield's Jetta. The police stopped the Jetta and found a gun (Eagle Uzi 9-mm) on the car floor. Bandfield claimed he had never seen the gun before. There was also blood on the front passenger seat and side of the doors. Bandfield believed someone else had gotten in his car while it was unoccupied.

Police Officer Corey Camp, who was dispatched to the Allen home, found Senior lying in the driveway and a black backpack containing "zip-tie" restraints on the path leading to the front door. Camp found a handgun (Davis Industries .38-caliber semiautomatic) and loaded handgun magazine (9 mm) lying in the street 10 to 15 feet away from Senior. The magazine did not match the handgun. Blood samples taken from the pistol and on the front porch and walkway matched Joshua's DNA profile. The blood found in Bandfield's Jetta and on the Uzi pistol found in his car also matched Joshua's DNA profile.

Joshua testified that he and defendant went to the Allen home to purchase marijuana. While Joshua was in the Allens' kitchen counting the money for the purchase, Senior accused Joshua of giving him a counterfeit hundred dollar bill. The two men grabbed for the money, fought, and punched each other. Joshua was shot in the arm and returned fire down the hallway. Senior was lying in the hallway near the front door.

5

Joshua was shot again in the finger and back, causing him to fall to the ground as he was running out the front door.

Defendant dragged Joshua to the street. The Flores brothers tried to get into the Jetta for cover, but Joshua was too heavy for defendant to lift into the car. A red car backed out of the Allens' driveway and ran over Joshua's thigh and hip. The car also hit defendant. Roland pulled up and helped defendant get Joshua into the car.

Defendants were tried together before two juries. One jury heard the charges against the Flores brothers and the other jury heard the case against Roland. Defendant was convicted of attempted voluntary manslaughter of Junior (§§ 664, 192; count 2), a lesser included offense of attempted premeditated murder (§§ 664, 187, subd. (a)); assault with a deadly weapon upon Kevin Yip (§ 245, subd. (b); count 6); first degree burglary (§ 459; count 7); and felon in possession of a handgun (§ 29800, subd. (a)(1); count 9). The jury also found true that he personally used a firearm (§ 12022.5, subd. (a)) in the commission of counts 2, 6, and 7. The trial court sentenced defendant to an aggregate prison term of 24 years 8 months.

On October 21, 2014, this court affirmed defendant's judgment.

On June 9, 2022, defendant filed a petition for resentencing pursuant to former section 1170.95 (now section 1172.6) and requested appointment of counsel to represent him. The petition alleged that an information was filed against defendant that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a

6

person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; he was convicted of murder, attempted murder, manslaughter or attempted manslaughter following a trial; and he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

Upon receipt of the petition, the trial court appointed counsel for defendant and allowed the parties to submit briefing.

A hearing to determine eligibility for resentencing was held on March 17 and April 28, 2023. Following lengthy arguments by the parties and the trial court's review of the instructions given to the jury at the time of trial and applicable appellate cases, the court denied defendant's petition for resentencing. Prior to denying the petition, the court read the jury instructions given at trial, including the aiding and abetting instructions, the attempted premeditated murder instructions, the attempted voluntary manslaughter instructions, and the imperfect self-defense instructions. The court noted that the attempted voluntary manslaughter and the imperfect self-defense instructions required an intent to kill when defendant acted and that there were no instructions given which malice could be imputed to defendant. The jury was not instructed under the felony-murder rule or the natural and probable consequences doctrine. In denying the petition, the court concluded that "the record of conviction, which includes the instructions given in this case and is a reflection of the court's own records, undermines the defendant's assertions in his petition that he could not be convicted under a currently valid theory of liability.

7

[¶]  In fact, the instructions that were given do not run afoul of [Senate Bill No.] 775, or [Senate Bill No.] 1473, and for that reason the petition is denied."  Defendant timely appealed.

III.

DISCUSSION

After defendant appealed, appointed appellate counsel filed a brief under the authority of *Delgadillo*, *supra*, 14 Cal.5th 216, setting forth a statement of the case and a summary of the procedural background.  (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*); *Anders v. California* (1967) 386 U.S. 738 (*Anders*).)  Counsel considered potential issues on appeal but found no specific arguments as grounds for relief, and requests that we exercise our discretion and independently examine the appellate record for any arguable issues.  Under *Anders*, which requires "a brief referring to anything in the record that might arguably support the appeal," (*Anders*, at p. 744) counsel raises the issues of (1) whether relief is available under section 1172.6 to a defendant convicted by jury of attempted voluntary manslaughter; and (2) whether a petition under section 1172.6 may present a prima facie case for relief where the jury was not instructed under a natural and probable consequences theory, but the record of conviction suggests the jury may have imputed malice to a defendant based on a codefendant's conduct.

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

8

In *Delgadillo*, *supra*, 14 Cal.5th 216, the California Supreme Court held that *Wende* and *Anders* procedures do not apply in appeals from the denial of a section 1172.6 postjudgment petition. (*Delgadillo*, at pp. 224-226.) Thus, we need not examine the entire record ourselves to look for arguable grounds for reversal. (*Id*. at p. 228.) Because defendant's counsel filed a brief raising no issues, and defendant was given an opportunity to file a personal supplemental brief but declined, we may dismiss the appeal as abandoned. (*Id*. at p. 232.) "Independent review in *Wende* appeals consumes substantial judicial resources," and "[t]he state . . . has an interest in an 'economical and expeditious resolution' of an appeal from a decision that is 'presumptively accurate and just.'" (*Id*. at p. 229.)

We, however, have discretion to conduct *Wende* review even when it is not required. (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.) Although this case does not call for us to exercise our discretion to independently examine the record for arguable issues, even if we exercised our discretion to independently examine the record, defendant's record of conviction shows that he is categorically ineligible for relief. Defendant was ineligible for relief as a matter of law because the jury was not instructed on the natural and probable consequences doctrine or on any other theory of murder in which malice is imputed based solely on his participation in a crime. Defendant's record of conviction shows that he was the actual perpetrator or directly aided and abetted in the attempted voluntary manslaughter of Junior and that he acted with the specific intent to kill. The jury instructions given at defendant's trial did not allow defendant to be convicted based

9

upon imputed malice but a showing of actual malice as the direct shooter or as an aider or abettor.  As such, it is impossible for defendant to make a prima facie case for relief under section 1172.6.  The trial court correctly denied defendant's section 1172.6 petition for resentencing.  Accordingly, we affirm the order.

## IV.

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

We concur:


RAMIREZ _____

    P. J.


McKINSTER _____

    J.